IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLOVERLEAF ENTERPRISES, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 10-407 |
| MARYLAND THOROUGHBRED, HORSEMEN'S ASSOCIATION, INC., *et al.*, | * * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff and Debtor Cloverleaf Enterprises, Inc. ("Cloverleaf"), which owns Rosecroft Raceway ("Rosecroft"), a Maryland standardbred racetrack, brings this antitrust and breach of contract suit against eighteen defendants - primarily racetracks, horsemen's associations and individuals that work for them. Pending before this Court are four motions: 1) a Motion to Dismiss the Breach of Contract (Count IV) and Right of Setoff (Count IX) claims filed by Defendants Maryland Jockey Club of Baltimore City, Inc., Laurel Racing Association, LP, Thomas Chuckas, Jr. and Dennis Smoter (collectively, "Jockey Defendants"); 2) Plaintiff Cloverleaf's related Motion to Strike the Jockey Defendants' Motion to Dismiss Counts IV and IX and to Compel an Answer to the Amended Complaint; 3) the Jockey Defendants' related Motion to Extend Time to File their Answer; and 4) Cloverleaf's Motion to Reconsider this Court's order granting the Motion for Summary Judgment by Defendants TrackNet Media Group, LLC ("TrackNet") and Churchill Downs Incorporated, Churchill Downs Incorporated t/a Arlington Park, Churchill Downs Incorporated t/a Calder Race Course and Churchill Downs Racetrack (collectively, "Churchill Downs"). The parties have fully briefed the issues and oral argument was

1

presented to this Court on July 29, 2010. For the reasons that follow, the Jockey Defendants' Motion to Dismiss the Breach of Contract (Count IV) and Right of Setoff (Count IX) claims (Paper No. 142) is GRANTED. Accordingly, Plaintiff Cloverleaf's Motion to Strike and to Compel an Answer (Paper No. 146) is MOOT, and the Jockey Defendants' Motion to Extend Time to File their Answer (Paper No. 158) is MOOT. Finally, Cloverleaf's Motion for Reconsideration (Paper No. 141) is DENIED.

## BACKGROUND

In light of this Court's August 6, 2010 Memorandum Opinion (Paper No. 133) addressing the parties' motions to dismiss as well as this Court's August 25, 2010 Memorandum Opinion (Paper No. 138) addressing Defendant TrackNet and Churchill Downs's Motion for Summary Judgment that detail the facts of this case at length, this Court need not repeat the extensive factual background here.

## ANALYSIS

**I. The Jockey Defendants' Motion to Dismiss the Breach of Contract and Right of Setoff Claims**

On August 6, 2010, this Court denied the Jockey Defendants' Motion to Dismiss Counts I and II (antitrust violations), Count III (unfair competition), Count VI (tortious interference with contract) and Count VII (declaratory judgment). In the same Order, this Court granted the Jockey Defendants an extension of time to respond to Counts IV (breach of contract) and IX (right of setoff).[1] *See* Paper Nos. 133 & 134. The Jockey Defendants now move to dismiss those claims contending that they fail to state a plausible claim for relief. Paper No. 142.

---

[1] In the same Order, this Court also granted the Motion to Dismiss (Paper No. 110) filed by the Maryland Thoroughbred Horsemen's Association ('Horsemen'), Richard J. Hoffberger and Alan Foreman (collectively, 'Horsemen Defendants') as to Count IV (breach of contract) but denied the motion as to the remaining counts.

## A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, to survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## B. Timeliness of Claims

Cloverleaf contends that the Jockey Defendants' motion should be denied or stricken because it is untimely. Cloverleaf points out that the original Scheduling Order approved by U.S. Bankruptcy Judge Paul Mannes required all of the defendants to file a motion or answer no

3

later than January 15, 2010, and that the pending motion was not filed until approximately nine months later, on September 3, 2010. Cloverleaf emphasizes that the Jockey Defendants "did not reserve the right to move to dismiss the breach of contract or the setoff claim, or any other claim, after the January, 2010 deadline." Paper No. 146 at 2.

The Jockey Defendants move to dismiss the breach of contract and right of setoff claims because they fail to state a claim for relief. Federal Rule of Civil Procedure 12(h)(2) permits the filing of a motion for failure to state a claim at any time prior to the conclusion of trial. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Thus, the defense of failure to state a claim is not waivable and need not be reserved. 5A Wright & Miller, Federal Practice and Procedure, § 1361 (2d ed. 1990) ("Under Rule 12(h) [the defense] of failure to state a claim upon which relief can be granted, Rule 12(b)(6), [is] preserved from the waiver mechanism in Rule 12(h)."). Additionally, on September 10, 2010, this Court issued a Scheduling Order setting the deadline for dispositive pretrial motions as February 22, 2011. Paper No. 144. Therefore, the Jockey Defendants' second motion to dismiss is timely according to the current Scheduling Order. Furthermore, on September 22, 2010, all of the parties involved in this matter—including Cloverleaf—filed a joint request for certain modifications to this Scheduling Order, including that the deadline for dispositive pretrial motions be extended to March 25, 2011. Paper No. 156. Thus, Cloverleaf's argument undercuts its own pending joint request to amend the scheduling order. Accordingly, the Jockey Defendants' Motion to Dismiss Counts IV and IX is not untimely.

**C.     Analysis**

The Jockey Defendants assert that Cloverleaf has failed to state a claim for breach of contract and right of setoff as to them.

**1.     Breach of Contract Claim (Count IV)**

4

Cloverleaf contends that the Jockey Defendants breached the Cross-Breed Agreement when they stopped consenting to Rosecroft's receipt of simulcast signals "as required" under the agreement. Am. Compl. ¶ 90. Cloverleaf concedes, however, that it failed to make the payments it owed to the Defendants under the Cross-Breed Agreement. As the Cross-Breed Agreement explains, the monthly payments Cloverleaf owed the Jockey Defendants were "for the right to accept wagers at Rosecroft on all live races conducted at Pimlico Race Course and Laurel Park and all out-of-state thoroughbred races." Am. Compl. Ex. C. ¶ 2. Importantly, in the event that '[the Maryland Jockey Club] or Cloverleaf fails to make timely payments to the other Party... the Party owed the funds may terminate this Cross-Breed Agreement and/or take such other legal actions as are available to it." *Id.* ¶ 12. As this language indicates, just like the Horsemen Defendants, the Jockey Defendants were entitled under the Agreement to revoke their consent to Rosecroft's receipt of simulcast signals after Cloverleaf failed to make its monthly payments.

Cloverleaf asserts that the Interstate Horseracing Act barred the Jockey Defendants from withdrawing their consent. Under the Interstate Horseracing Act, an off-track betting facility ('OTB') must get consent to accept wagers from both the host state, which is the state where the race is held, and from the home state, which is the state where the OTB facility is located. Am. Compl. ¶ 29; 15 U.S.C. §§ 3004(a)(2). With respect to the home state consent, an OTB facility must receive consent from both the home state racing commission and from any tracks within sixty miles of the OTB facility. Am. Compl. ¶¶ 30, 32; 15 U.S.C. §3004(b)(1)(A). Cloverleaf interprets this language to mean:

> The IHA does not grant 60-mile tracks the unilateral right to withdraw consent. The IHA merely directs an OTB to obtain consent from a "currently operating" 60-mile track before accepting an off-track wager.

Paper No. 129 at 10. Cloverleaf's interpretation is incorrect. Essentially, Cloverleaf contends that though an off-track betting facility must get consent from all tracks within 60 miles before it

may accept wagers, once that consent is given, it can never be taken back. This interpretation of the Interstate Horseracing Act is also at odds with the Cross-Breed Agreement's provision stating that a party may terminate the Cross-Breed Agreement when it is owed money by another party to the agreement. Accordingly, Cloverleaf's breach of contract claim as to the Jockey Defendants is dismissed.

D.      **Right of Setoff Claim (Count IX)**

On or about July 14, 2009, the Jockey Defendants filed a proof of claim in Cloverleaf's pending bankruptcy case. Am. Compl. ¶ 118. This claim seeks to recover approximately $1.7 million in premium payments from Cloverleaf that the Jockey Defendants allege they are owed under the Cross-Breed Agreement. Am. Compl. ¶ 118; Ex. C ¶ 2. In its Amended Complaint, Cloverleaf objects to this proof of claim (Count X), and also claims that the Jockey Defendants owe it "setoff" payments of approximately $1.4 million under the Cross-Breed Agreement for its share of wagering revenues. Am. Compl. ¶ 116 (Count IX); Ex. C ¶ 7. This Court has made clear, however, that a claim for relief arising out of the same transaction on which an adversary's claim is based is a claim for recoupment, not for setoff. *See Holland v. Psychological Assessment Res., Inc.*, 2004 U.S. Dist. LEXIS 11006, at *19-20 (D. Md. June 16, 2004). As the Court of Appeals of Maryland explains:

> 'Recoupment' means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of the same transaction on which the adversary's claim is based; "setoff" means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of a transaction other than that on which the adversary's claim is based.

*Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 744 A.2d 549, 552 (Md. 2000). Cloverleaf "seeks to reduce the amount awarded, if any, on [the Jockey Defendants'] proof of claim, or to recover sums that the [Jockey Defendants] owe Cloverleaf under the Cross-Breed Agreement." Paper No. 146 at 9. Since Cloverleaf seeks a monetary judgment based upon the breach of

6

contract claim that it has filed against the Jockey Defendants in this adversary proceeding, and not based upon a separate transaction, its allegations in Counts IX are more appropriately considered as a claim for recoupment.

Assuming that Cloverleaf's claim for recoupment has been properly raised before this Court, Cloverleaf has failed to allege facts supporting this defense. In an action for breach of contract in which the defendant alleges that the plaintiff also has breached the contract, the defendant is entitled to claim recoupment for any damages "which were the certain result" of the plaintiff's breach. *Holland*, 2004 U.S. Dist. LEXIS 11006, at *20 (quoting *Smith*, 558 A.2d at 805). Thus, Cloverleaf is not entitled to recoupment unless the Jockey Defendants "ha[ve] not complied with some cross obligation of the contract. . .or ha[ve] violated some legal duty in the making or performance of that contract." 20 Am. Jur. 2d Counterclaim, Recoupment & Setoff § 5. This Court has dismissed Cloverleaf's breach of contract claim against the Jockey Defendants (Count IV). Accordingly, Cloverleaf fails to provide any basis for a defense of recoupment.

II. **Cloverleaf's Motion to Strike and to Compel an Answer and the Jockey Defendants' Related Motion to Extend Time to File their Answer**

Cloverleaf has moved to strike the Jockey Defendants' Motion to Dismiss Counts IV and IX and to compel an answer to the Amended Complaint. Paper No. 146. Since this Court has granted the Jockey Defendants' Motion to Dismiss, Cloverleaf's Motion to Strike is moot. Cloverleaf also moved to compel an answer, and as a result the Jockey Defendants moved for an extension of time to file their answer. Paper No. 158. On September 21, 2010, the Jockey Defendants answered the Amended Complaint (other than Counts IV and IX). Paper No. 155. As a result, Cloverleaf's Motion to Compel an Answer and the Jockey Defendants' Motion for an Extension of Time to File their Answer are also moot.

III. **Cloverleaf's Motion to Reconsider**

Cloverleaf seeks reconsideration of this Court's August 25, 2010 order (Paper No. 139) granting summary judgment to Defendants TrackNet and Churchill Downs on Cloverleaf's sole claim against them for breach of contract (Count V).

### A. Standard of Review

As Judge Quarles recently explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, Civ. No. WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992) (footnote omitted).

Since Cloverleaf's motion was filed seven days after the entry of this Court's judgment, it is properly analyzed under Rule 59(e).

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a judgment may be amended under Rule 59(e) in only three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al., Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995)). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting Wright, *et al., supra*, § 2810.1, at 124).

### B. Analysis

In its Motion to Reconsider, Cloverleaf contends that this Court committed a "clear error of law" by entering summary judgment against Cloverleaf on its breach of contract claim before it had an opportunity to conduct discovery. Cloverleaf emphasizes that if TrackNet and Churchill Downs stopped sending its simulcast signals to Rosecroft as a part of an illegal group boycott, then such action would constitute a breach of the Simulcast Agreement. Thus, Cloverleaf asserts that this Court was mistaken in "holding that Cloverleaf has not presented sufficient evidence of TrackNet's and Churchill Downs' participation in a group boycott" at this early stage. Paper No. 141 at 1.

As this Court noted in its August 24, 2010 Memorandum Opinion, Cloverleaf's Amended Complaint does not assert an antitrust claim against Defendants TrackNet and Churchill Downs. Paper No. 138 at 11. Instead, Cloverleaf alleges only that TrackNet and Churchill Downs breached the Simulcast Agreement by failing to provide the simulcast signal to Cloverleaf as it was "required" to under the agreement. Am. Compl. ¶ 94 (Count V). Thus, Cloverleaf alleged for the first time in its brief in opposition to summary judgment—and for a second time in the pending motion for reconsideration—that TrackNet and Churchill Downs breached the Simulcast Agreement because it engaged in anticompetitive conduct. Cloverleaf is essentially attempting to assert an antitrust claim against these defendants through its breach of contract claim. As Cloverleaf itself explains: "it is clear error to grant Defendants' motion [for summary judgment] before Cloverleaf has been afforded an opportunity to discover evidence sufficient to prove (or to create a dispute of fact) *that Defendants participated in the antitrust conspiracy*." Paper No. 152 at 2 (emphasis added). In other words, Cloverleaf asserts that it has a right to discovery to prove a claim that it has not brought against TrackNet and Churchill Downs.

In its motion, Cloverleaf repeatedly declares that it has "successfully plead an antitrust conspiracy involving TrackNet and Churchill Downs." Paper No. 141 at 3. This statement is incorrect. Although Cloverleaf has alleged antitrust violations by the Maryland Jockey Club and the Horsemen's Association that this Court found sufficient to state a claim, Cloverleaf has not made any such allegations as to TrackNet or Churchill Downs. The only remotely relevant allegation Cloverleaf has made against these defendants is that TrackNet received an email from the Vice President of the Maryland Jockey Club stating that the Maryland Racing Commission had withdrawn its approval for Rosecroft to receive simulcast signals. Am. Compl. ¶ 46. The mere fact that TrackNet and Churchill Downs received an email pursuant to the alleged antitrust conduct does not mean that they were a party to that conduct. Cloverleaf attempts to support its contention that it is law of the case that it has adequately pled an antitrust conspiracy against TrackNet and Churchill Downs by referencing this Court's prior statement that, after the Maryland Jockey Club sent an email to out-of-state racetracks informing them that the Maryland Racing Commission removed its consent for Rosecroft to accept interstate off-track wagers, "at least seventeen out-of-state tracks had ceased sending simulcast signals to Rosecroft, including Churchill Downs." Paper No. 141 at 2. Contrary to Cloverleaf's reading, this statement does not indicate that Churchill Downs (or TrackNet) was aware of or participated in any allegedly improper conduct. Accordingly, Cloverleaf has <u>not</u> adequately pled an antitrust conspiracy as to TrackNet and Churchill Downs.

Cloverleaf also contends that TrackNet and Churchill Downs breached the Simulcast Agreement by "affirmatively [shutting] the signals off." Paper No. 152 at 3. As Cloverleaf explains, "[t]he Simulcast Agreement did not, as Defendants contend, metaphysically 'automatically terminate' without human action." *Id*. The Simulcast Agreement between

10

Cloverleaf and TrackNet/Churchill Downs states that it "automatically terminated . . . upon the failure to obtain or withdrawal of any approvals required by any applicable laws as to the transactions contemplated hereby." Paper No. 135, Ex. 3 at ¶ 16(A). Considering the plain meaning of this language, this Court held in its earlier memorandum opinion that the Simulcast Agreement terminated under its own terms when the Maryland Racing Commission withdrew its consent for Rosecroft to receive simulcast signals on April 29, 2009. Paper No. 138 at 9. Though Plaintiff subsequently obtained an injunction preventing the Maryland Racing Commission from withdrawing its approval without providing further notice and a hearing, by that time the Maryland Jockey Club had also withdrawn its consent for Rosecroft to receive simulcast signals. *Id*. As this Court previously explained: "Once the Simulcast Agreement terminated, TrackNet had no obligation to authorize transmission of the Thoroughbred simulcast signals to Rosecroft from the TrackNet racetracks, including Churchill Downs." *Id*. Cloverleaf has not refuted this holding or established that this Court committed a clear error of law that resulted in manifest injustice as to this claim. Accordingly, Cloverleaf's Motion for Reconsideration must be denied.

## CONCLUSION

For the reasons stated above, the Jockey Defendants' Motion to Dismiss the Breach of Contract (Count IV) and Right of Setoff (Count IX) Claims (Paper No. 142) is GRANTED. Accordingly, Plaintiff Cloverleaf's Motion to Strike and to Compel an Answer (Paper No. 146) is MOOT, and the Jockey Defendants' Motion to Extend Time to File their Answer (Paper No. 158) is MOOT. Finally, Cloverleaf's Motion for Reconsideration (Paper No. 141) is DENIED.

A separate Order follows.

Dated: November 1, 2010            /s/_____
                                   Richard D. Bennett
                                   United States District Judge